UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PharMerica Mountain, LLC d/b/a PharMerica,<br><br>    Plaintiff<br><br>v.<br><br>RCSRP Corporation d/b/a Desert Hills Post-Acute & Rehabilitation Center, and MMMT Corporation,<br><br>    Defendants | Case No.: 2:20-cv-00732-JAD-EJY<br><br>**Order Granting in Part Motion for Default Judgment**<br><br>[ECF No. 18] |

Plaintiff PharMerica Mountain, LLC contracted with defendants RCSRP Corporation and MMMT Corporation to provide pharmacy-related goods and services for the residents of a skilled nursing facility that the defendants owned and operated.[1] It claims that the defendants failed to pay as required under the agreements, leaving an overdue balance of $216,009.47.[2] PharMerica sues to collect that amount, plus prejudgment interest and attorneys' fees, asserting (1) a claim for breach of contract against RCSRP; (2) a claim for breach of implied contract against MMMT; (3) a claim for attorneys' fees against both defendants; and alternatively (4) claims against both defendants for unjust enrichment or constructive trust, promissory estoppel, quantum meruit, and account stated.[3]

---

[1] ECF No. 1 at ¶¶ 1, 9.

[2] *Id.* at ¶ 101.

[3] *Id.* at ¶¶ 51–105.

RCSRP and MMMT have failed to appear in this action since PharMerica filed its complaint against them almost a year ago.[4] The Clerk of Court entered default against both defendants and PharMerica now moves for default judgment on all of its claims against them.[5] I find that PharMerica has met its burden to show that default judgment is warranted on its breach-of-contract claim against RCSRP and its breach-of-implied-contract claim against MMMT. Although PharMerica has not shown that MMMT agreed to pay prejudgment interest or attorneys' fees, PharMerica is entitled to prejudgment interest against MMMT under NRS 99.040. I therefore grant in part PharMerica's motion for default judgment in part and direct the Clerk of Court to enter judgment.

## Background

PharMerica entered into a Pharmacy Services Agreement (PSA) with RCSRP in December 2016 to provide pharmacy-related goods and services for the residents of the nursing facility that RCSRP and MMMT owned and operated.[6] PharMerica and RCSRP amended the agreement in May 2017 to extend its duration through April 2020.[7] Under the PSA, RCSRP agreed to pay the amounts invoiced, interest at a monthly rate of 1.5% on all outstanding amounts not paid within 60 days, and the costs and expenses PharMerica incurred collecting payment, including reasonable attorneys' fees.[8] The defendants did not dispute any of

---

[4] ECF No. 1.
[5] ECF No. 18.
[6] ECF Nos. 1 at ¶¶ 1, 9; 18-4.
[7] ECF Nos. 1 at ¶ 21; 18-5.
[8] ECF No. 18-4 at 6, ¶ D.

PharMerica's invoices.[9]  When the defendants failed to pay invoices as they became due and owing, PharMerica and RCSRP entered into a temporary Letter Agreement requiring RCSRP to make weekly advance payments of $5,000 beginning in July 2019.[10]  The Letter Agreement did not alter the material terms of the PSA, so the defendants remained responsible for paying the invoiced amounts.[11]  RCSRP briefly complied with the terms of the Letter Agreement but made its last payment in September 2019 with more than $200,000 still due and owing to PharMerica.[12]

PharMerica's relationship with MMMT stems from MMMT's relationship with RCSRP.  Although PharMerica did not expressly contract with MMMT, the parties formed an implied contract.  MMMT was the facility's operator and licensee, and a party to a Medicare Provider Agreement with a department of the United States.[13]  PharMerica alleges three ways that it has a relationship with MMMT: (1) implied contract based on course of performance, (2) RCSRP contracted with plaintiff on MMMT's behalf, and (3) MMMT is RCSRP's alter ego.[14]  As discussed below, PharMerica concludes that RCSRP contracted with PharMerica on MMMT's behalf, but it does not plead facts or provide evidence to support that proposition.  Its conclusion that MMMT and RCSRP are alter egos of each other is similarly unsupported.  But PharMerica

---

[9] ECF No. 1 at ¶ 33.
[10] ECF Nos. 1 at ¶¶ 34–37; 18-6.
[11] ECF No. 18-6.
[12] ECF Nos. 1 at ¶ 38; 18-7.
[13] ECF No. 1 at ¶¶ 11–18.
[14] *Id.* at ¶¶ 18, 19, 58–67.

has sufficiently alleged and provided evidence that it entered into a valid implied contract with MMMT.

PharMerica demanded the sums due and owing under the agreements, but RCSRP and MMMT failed to pay.[15] So PharMerica sued them both.[16] RCSRP and MMMT were served with the Complaint and Summons on April 27, 2020, but neither responded,[17] so the Clerk of Court entered default against them on June 3, 2020.[18]

## Discussion

### A.   Default-judgment standard

Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain a default judgment after the Clerk of Court enters default based on a defendant's failure to defend. After default, the complaint's factual allegations are taken as true, except those relating to damages.[19] "[N]ecessary facts not contained in the pleadings, and claims [that] are legally insufficient, are not established by default."[20] The court can require a plaintiff to provide additional proof of facts or damages to ensure the requested relief is appropriate.[21] A default judgment must not differ in kind from, or exceed in amount, the demands in the pleadings.[22] The trial court has

---

[15] *Id*. at ¶¶ 34, 54, 65.

[16] *Id*. at ¶¶ 51–105.

[17] ECF Nos. 5; 6.

[18] ECF No. 12.

[19] *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[20] *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

[21] *See* Fed. R. Civ. P. 55(b)(2).

[22] *See* Fed. R. Civ. P. 55(c).

discretion to determine whether to grant a motion for default judgment based on the seven factors outlined by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[23]

**B.     Evaluating the *Eitel* factors**

**1.     Possibility of prejudice to PharMerica**

The first *Eitel* factor weighs in favor of default judgment because PharMerica would otherwise likely be without other recourse or recovery. PharMerica has been attempting for more than a year to recover the money that it contends RCSRP and MMMT owes it. RCSRP and MMMT's failure to appear or respond prejudices PharMerica's ability to pursue its claims against them on the merits.

**2.     Substantive merits and sufficiency of PharMerica's claims**

The second and third *Eitel* factors require PharMerica to demonstrate that it has stated a claim against each defendant on which it may recover.[24] PharMerica's complaint contains a breach-of-contract claim against RCSRP, breach-of-implied-contract claim against MMMT, and claims for unjust enrichment or constructive trust, quantum meruit, promissory estoppel, account stated, and attorneys' fees against both defendants.[25]

---

[23] *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).
[24] *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).
[25] ECF No. 1 at ¶¶ 51–105.

5

The elements of a breach-of-contract claim in Nevada are (1) formation of a valid contract, (2) performance or excuse of performance by the plaintiff, (3) material breach by the defendant, and (4) damages as a result of the breach.[26] PharMerica has alleged and provided evidence that it had a valid agreement with RCSRP to provide pharmacy goods and services to its nursing facility in exchange for compensation;[27] PharMerica performed its obligations by providing goods and services;[28] RCSRP breached their agreement by failing to pay PharMerica;[29] and as a direct and proximate result, PharMerica has suffered damages including amounts due and owing for the goods and services provided, interest, attorneys' fees, and other costs related to this action.[30]

PharMerica supports these allegations with agreements that were signed by it and RCSRP,[31] an open invoice list,[32] the interest-calculation log,[33] attorneys' time reports,[34] cost receipts,[35] and three signed affidavits explaining the relationship—and its deterioration—between PharMerica and RCSRP.[36] PharMerica has shown that RCSRP received but did not pay

---

[26] *Greenstein v. Wells Fargo Bank, N.A.*, 746 F. App'x 637, 638 (9th Cir. 2018) (quoting *Laguerre v. Nev. Sys. of Higher Ed.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011)).
[27] ECF Nos. 1 at ¶ 52; 18-4.
[28] ECF No. 1 at ¶ 53.
[29] *Id.* at ¶ 54.
[30] *Id.* at ¶¶ 55–57.
[31] ECF Nos. 18-4; 18-5; 18-6.
[32] ECF No. 18-7.
[33] ECF No. 18-8.
[34] ECF Nos. 14-1; 15-1.
[35] ECF Nos. 14-2; 15-2.
[36] ECF Nos. 14; 15; 16.

for $216,009.46 in pharmacy-related goods and services that PharMerica provided. It has also shown that RCSRP agreed to pay interest on all outstanding amounts not paid within 60 days and calculated at a monthly rate of 1.5%, and the costs and expenses incurred collecting payment, including reasonable attorneys' fees.[37]

The elements of a breach-of-implied-contract claim are primarily the same as those for breach of an express contract.[38] Where the claims differ is that "[t]he terms of an express contract are stated in words while those of an implied contract are manifested by conduct."[39] "[T]o prevail on the theory of a contract implied in fact," the plaintiff must demonstrate that "both parties intended to contract and that promises were exchanged . . . ."[40]

PharMerica pleads facts and provides evidence that MMMT promised to pay PharMerica for goods and services that defendants needed to administer to their facility's residents.[41] The parties manifested this implied contract when MMMT ordered goods and services from PharMerica, PharMerica fulfilled the orders and delivered goods to MMMT, MMMT received and accepted them, and MMMT made payments to PharMerica.[42] When MMMT breached the agreement by failing to pay, PharMerica suffered damages.[43] Although the written contracts

---

[37] ECF No. 18-4 at 6, ¶ D.
[38] *Smith v. Recrion Corp.*, 541 P.2d 663, 664 (Nev. 1975).
[39] *Id.*
[40] *Id.* at 665.
[41] ECF No. 1 at ¶¶ 59–62.
[42] *Id.* at ¶¶ 63–64; *accord* ECF No. 18-3 at 4–5, ¶¶ 11–12, 15 (declaration of Michael Rodriguez, PharMerica's Director of Collections of Client Billing Services).
[43] ECF No. 1 at ¶¶ 64–67.

name only RCSRP as PharMerica's client, MMMT is carbon copied on the Letter Agreement,[44] and PharMerica's Director of Collections of Client Billing Services declares that it had an "arrangement"—as that term is used in the Medicare field—with Medicare-provider MMMT that mirrored the contracts' terms for costs of goods and services.[45]  The demonstrated terms of the implied contract, however, do not include prejudgment interest at 18% per annum or attorneys' fees.  PharMerica's allegations and evidence simply don't stretch that far.

RCSRP and MMMT's absence from this action have made it impossible for them to refute PharMerica's well-pled facts and evidence.  Based on this record, I find that PharMerica has established meritorious claims for breach of contract against RCSRP and breach of implied contract against MMMT.[46]  The second and third *Eitel* factors therefore weigh in favor of default judgment.

### 3.  Sum of money at stake in the action

The sum-of-money factor requires me to consider the amount of money at stake in relation to the seriousness of RCSRP and MMMT's conduct.[47]  Judgment is disfavored if the sum of money at stake is "completely disproportionate or inappropriate."[48]  PharMerica seeks judgment in the amount of $216,009.47 as compensation for RCSRP and MMMT's overdue

---

[44] ECF No. 18-6 at 3.

[45] *See* ECF No. 18-3 at 2–4, ¶¶ 4, 7–11.

[46] Because I find that PharMerica has stated valid contract-based claims against the defendants, I need not and do not reach the merits of its claims for unjust enrichment or constructive trust, promissory estoppel, quantum meruit, and account stated, all of which are pled in the alternative.

[47] *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006) (quoting *PepsiCo. Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002)).

[48] *Twentieth Century Fox*, 438 F. Supp. 2d at 1071.

account. PharMerica's evidence shows that the sum sought represents the value of the goods and services that it provided to the defendants.[49]

PharMerica also seeks an award of attorneys' fees but states that it "intends to separately file a motion for legal fees and costs" under LR 54-14.[50] So I do not reach that damage element in this order except to conclude that PharMerica is entitled to recover reasonable attorneys' fees under its express contract with RCSRP[51] but not under its implied contract with MMMT. PharMerica also seeks an award of prejudgment interest against the defendants in the amount of $62,014.92 through August 4, 2020, with interest accruing each day thereafter at the rate of $116.28 until entry of judgment. Nevada has long recognized that parties are free to agree to any rate of interest,[52] and if they fix such rate in a written contract, it "shall prevail in all cases."[53] Here, the agreement between RCSRP and PharMerica expressly provides that if any undisputed charges are not paid within 60 days, interest accrues at the annual rate of 18%.[54] The amount of prejudgment interest that PharMerica can recover against RSCRP under the PSA is $87,480.24.[55]

---

[49] ECF No. 18-3 at 5, ¶¶ 15–16.

[50] ECF No. 18 at 9.

[51] ECF No. 18-4; *see also* ECF No. 18-6 (expressly reserving PharMerica's right to recover "lost profits, interest, and attorneys' fees").

[52] Nev. Rev. Stat. § 99.050(1).

[53] *McLane v. Abrams*, 2 Nev. 199, 205 (1866). *See also Dobron v. Bunch*, 215 P.3d 35, 41 (citing Nev. Rev. Stat. § 99.050: "parties may agree for the payment of any rate of interest on money due or to become due on any contract, for the compounding of interest if they choose, and for any other charges or fees").

[54] ECF No. 18-4 at 6, ¶ D.

[55] This is updated from the $62,014.92 figure that PharMerica calculated and provided with its motion to account for the 219 days that have since passed. $62,014.92 + $25,465.32 = $87,480.24.

PharMerica is not entitled to recover prejudgment interest under its implied contract with MMMT, but it is entitled to that damage element under Nevada law.[56] NRS 99.040 provides that "[w]hen there is no express contracting in writing fixing a different rate of interest" in an action "upon contracts, express or implied, other than book accounts," "interest must be allowed at a rate equal to the prime rate at the largest bank in Nevada, as ascertained by the Commissioner of Financial Institutions, on January 1 or July 1 as the case may be, immediately preceding the date of the transaction, plus 2 percent . . . ."[57] The prime rate from July to December 2018 was 5%; from January to June 2019 and July to December 2019 was 5.5%; and from January to June 2020 was 4.75%.[58] The amount of prejudgment interest that PharMerica can recover against MMMT under Nevada law is $38,270.00. Based on the evidence presented, I'm satisfied that the damages discussed above are consistent with the terms of the contracts between the parties and are otherwise appropriate. This factor thus weighs in favor for default judgment.

### 4. Possibility of a dispute concerning material facts

I next consider the possibility that material facts are disputed. PharMerica adequately alleged and supported a breach-of-contract claim against RCSRP and a breach-of-implied-contract claim against MMMT, and those defendants have failed to appear or otherwise respond. Because the facts in the complaint are now admitted as true, no factual disputes exist that would

---

[56] *Schoepe v. Pac. Silver Corp.*, 893 P.2d 388, 389 (Nev. 1995) (providing that "prejudgment interest is recoverable as a matter of right in actions upon contracts for all money from the time it becomes due").

[57] Nev. Rev. Stat. § 99.040(1); *see also Lake Tahoe Sailboat Sales & Charter, Inc. v. Douglas Cty.*, 562 F. Supp. 523, 524 (D. Nev. 1983).

[58] St. of Nevada, Dept. of Business & Industry, Financial Institutions, https://fid.nv.gov/uploadedFiles/fidnvgov/content/Resources/Prime%20Interest%20Rate%20January%201,%202021.pdf (last accessed March 15, 2021).

preclude the entry of default judgment against RCSRP or MMMT. This fifth factor thus weighs in favor of default judgment.

### 5. Whether the default was due to excusable neglect

Under the sixth factor, I consider whether RCSRP and MMMT's default may have resulted from excusable neglect. PharMerica originally provided the defendants, via RCSRP, with written notice of the overdue amounts in July 2019 after they failed to pay PharMerica's invoices.[59] Consequently, PharMerica exercised its right to require that all future deliveries be paid in advance on a COD basis, and the defendants complied until September 2019.[60] In April 2020, PharMerica filed a complaint and properly served RCSRP and MMMT, who were required to answer or otherwise plead by May 18, 2020.[61] When the defendants failed to respond, the Clerk of Court entered default against them on June 3, 2020.[62] RCSRP and MMMT have demonstrated a habit of ignoring both PharMerica and the contractual amounts they owe it, so I can only conclude that their default was not the product of excusable neglect. This factor weighs in favor of entering default judgment.

### 6. Strong policy favoring decisions on the merits

Default judgments are generally disfavored because "[c]ases should be decided upon their merits whenever reasonably possible."[63] Because RCSRP and MMMT have failed to respond to anything at all in this action, it is not possible to decide this case on its merits, so this

---

[59] ECF No. 18 at 4.
[60] *Id*.
[61] *See* Affidavits of Service at ECF Nos. 5; 6.
[62] ECF No. 12.
[63] *Eitel*, 728 F.2d at 1472.

factor weighs in favor of granting default judgment as well. Every *Eitel* factor weighs in favor of entering default judgment.

## Conclusion

Accordingly, and with good cause appearing and no reason to delay, IT IS THEREFORE ORDERED that PharMerica's motion for default judgment **[ECF No. 18] is GRANTED in part**. The **Clerk of Court** is directed to **ENTER JUDGMENT** in favor of PharMerica Mountain, LLC d/b/a PharMerica on its breach-of-contract claim against RCSRP Corporation d/b/a Desert Hills Post-Acute & Rehabilitation Center and on its breach-of-implied-contract claim against MMMT Corporation. **The motion is denied in all other respects.**

The Clerk of Court is directed to **ENTER JUDGMENT** against (1) defendants RCSRP and MMMT jointly and severally in the amount of $216,009.47 for compensatory damages; (2) against defendant RCSRP severally in the amount of $87,480.24 for prejudgment interest; and (3) against defendant MMMT severally in the amount of $38,270.00 for prejudgment interest.

IT IS FURTHER ORDERED that post-judgment interest on the entire amount of the judgment will run at a rate of 0.09%, compounded annually, from March 16, 2021, until satisfied.[64]

---

[64] Post-judgment interest is mandatory, 28 U.S.C. § 1961; *see Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activities*, 518 F.3d 1013, 1017–18 (9th Cir. 2008), "federal law determines the rate of post-judgment interest" even in diversity cases, and post-judgment interest should be awarded on the entire judgment amount. *Lagstein v. Certain Underwriters as Lloyd's of London*, 725 F.3d 1050, 1056 (9th Cir. 2013).

IT IS FURTHER ORDERED that PharMerica has until **April 16, 2021**, to file its motion for attorneys' fees and costs.

Dated: March 16, 2021

_____
United States District Judge Jennifer A. Dorsey